**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CYNTHIA RICE, Individually, and as Surviving Spouse and Next of Kin to CHRISTOPHER RICE,** *deceased*, | |
| **Plaintiff,** | **JURY DEMAND** **Case No.** |
| **v.** | |
| **AECOM, MCHUGH CONCRETE CONSTRUCTION, INC., HARCON, INC., MAXIM CRANE WORKS, L.P.,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, CYNTHIA RICE, Individually, and as Surviving Spouse and Next of Kin to CHRISTOPHER RICE, *deceased*, by and through counsel, hereby files this civil action against Defendants AECOM, MCHUGH CONCRETE CONSTRUCTION, INC., HARCON, INC., MAXIM CRANE WORKS, L.P., based upon the following grounds:

### SUMMARY OF CLAIMS

This case arises out of a fatality that occurred at a commercial construction site in Nashville, Tennessee. MS. RICE brings these claims for relief against Defendants for the wrongful death of her thirty-five-year-old husband, CHRISTOPHER RICE, and other damages sustained when a crane operator hoisted a load of concrete formwork that was allowed to fall, due to a series of improper steps taken to secure and hoist the load with nylon straps, striking MR. RICE and causing him to fall to his untimely death three floors below.

## PARTIES

1.        Plaintiff, CYNTHIA RICE ("Plaintiff"), bring this survival action as surviving spouse and next of kin to decedent, CHRISTOPHER RICE, *deceased,* pursuant to Tenn. Code Ann. §§ 20-5-102, 20-5-106, and 107.

2.        Plaintiff, CYNTHIA RICE, a resident and citizen of Spring Hill, Maury County, Tennessee.  MS. RICE is the proper party to prosecute this claim as the surviving spouse and next of kin in accordance with Tenn. Code Ann. §§ 20-5-102, 20-5-106, and 107. Plaintiff and CHRISTOPHER RICE were married at the time of his death.

3.        CHRISTOPHER RICE is also survived by one, biological, minor child and one, adopted, minor child.

4.        Plaintiff brings these Wrongful Death and Survival actions within one (1) year of the date of death of her husband, the decedent.

5.        Defendant, AECOM (a/k/a AECOM HUNT and/or AECOM HUNT CONSTRUCTION GROUP)("AECOM"), is a foreign for-profit corporation organized and formed in the state of Delaware, maintaining a principal office in Dallas, Texas. Defendant AECOM does business in Tennessee and may be served process by serving its registered agent for service of process, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546 and/or CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.        Defendant, MCHUGH CONCRETE CONSTRUCTION, INC. ("MCHUGH"), is a foreign for-profit corporation organized and formed in the state of Illinois, maintaining a principal office in Chicago, IL. Defendant MCHUGH does business in Tennessee and may be served process by serving its registered agent for service of process, CT Corporation System,

2

300 Montvue Road, Knoxville, Tennessee 37919-5546.

7.      Defendant, HARCON, INC., hereinafter referred to as "HARCON", is a foreign for-profit corporation. Its principal address is 498 Tuggle Greer Drive, Buford, Georgia 30518. Its registered agent is National Registered Agents, Inc., which may be served at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

8.      Defendant, MAXIM CRANE WORKS, L.P. ("MAXIM CRANE") is a foreign for-profit corporation organized and formed in the state of Pennsylvania, maintaining a principal office in 1225 Washington Pike, Suite 100, Bridgeville, Pennsylvania 15017. Defendant MAXIM CRANE WORKS does business in Tennessee and may be served process by serving its registered agent for service of process, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

9.      Defendants may be referred to herein collectively as "Defendants."

## JURISDICTION AND VENUE

10.      Many of the acts complained of and Plaintiff's injuries and damages occurred in this District and venue is appropriately laid in the Middle District of Tennessee.

11.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, exclusive of costs and interest. Complete diversity of citizenship exists between the Parties.

## FACTS

12.      The incident that is the subject of this lawsuit occurred at a commercial construction site located at 900 Church Street, Nashville, Tennessee. The final structure is a 34-story, 416-foot-tall residential tower with 356 units known as the "Alcove." [1]

---

[1] See Project Sheet, attached as Exhibit A.

13.     At the time of this incident, Defendants were engaged in active construction on the Alcove residential complex and had completed 31 of the 34 stories. Active crane operations were being performed to complete concrete formwork for the remaining three stories as well as numerous other trade operations.

14.     From its global headquarters in Dallas, Texas, AECOM holds itself out as the world's trusted infrastructure consulting firm, partnering with clients to solve the world's most complex challenges and build legacies for generations to come.  AECOM specifically advertises that they are the trusted advisors – planners, designers, engineers, consultants and program and construction managers – delivering professional services spanning cities, transportation, buildings, water, new energy, and the environment. AECOM represents that "working throughout the project lifecycle, we're on team driven by a common purpose to deliver a better world." AECOM is now an independent publicly traded company formed by the merger of five entities.

15.     From its headquarters in Chicago, Illinois, MCHUGH represents that it offers "unparalleled expertise and innovation in general contracting, construction management and consulting, preconstruction, concrete services, virtual design, construction and design-build services across multiple sectors." MCHUGH holds itself out as "honest, reliable, hardworking, and imaginative" and states "our unique expertise serving as general contractor, construction manager, and concrete subcontractor provides us the flexibility to tailor our services to meet the needs of our clients. We value our partners and go the extra mile to treat them as we like to be treated."

16.     From its headquarters in Buford, Georgia, HARCON holds itself out as a specialist in concrete formwork. HARCON represents that "regardless of size or complexity

of the project, we have the collective resources, both in the field and in the office, to meet the varying requirements of any project." HARCON further represents it "has earned the reputation for safety, quality, integrity, and performance."

17.    Defendant MAXIM CRANE holds itself out as a company specializing in the rental and sale of lift equipment including hydraulic truck cranes, rough terrain cranes, crawler cranes, tower cranes, conventional truck cranes, and boom trucks. MAXIM CRANE represents that each of its branches "has the capability to provide management, engineering, transportation, and outsourcing – making MAXIM CRANE'S product and service offerings the most far-reaching in the industry. Our crane service provides you with the resources to complete your projects, on time and on budget." MAXIM CRANE specifically further represents that "[w]hat makes us stand out from other crane companies is the dedication to providing a high-quality service, offering specialist expertise throughout the entirety of your lease agreement." "With one of the largest inventories of modern lifting equipment in the world, MAXIM CRANE is able to cater to a wide range of requests and requirements to improve the efficiency of your projects." MAXIM CRANE states that their "commitment to continuous improvement through an ever-expanding fleet, CCO certified operators, a zero-accident policy, and a team that is committed to providing customers with the crane and services that meet or exceed their needs has made MAXIM CRANE the #1 Crane Rental Company in the United States."

18.    Before June 17th, 2022, AECOM assumed the role of general contractor for the Alcove construction project located a 900 Church Street, Nashville, TN.

19.    As general contractor, AECOM was responsible for scheduling and overseeing day-to-day operations of the Alcove construction project, including overall workplace safety.

20.     AECOM then hired or subcontracted trade specialties to manage various aspects of the project, including concrete, plumbing, and electrical work.

21.     AECOM subcontracted certain responsibilities to MCHUGH who in turn subcontracted HARCON. AECOM also subcontracted MAXIM CRANE for all crane-related operations on the Alcove construction project.

22.     HARCON was subcontracted for concrete work, specifically all horizontal concrete formwork.

23.     The safety policies and protocols of AECOM are approved and implemented from officers from its corporate headquarters in Texas. Prior to June 17th, 2022, as will be set forth in greater detail below, AECOM made several key corporate decisions that have direct bearing on the facts of this case, which include: (1) inadequate on- the-job training and evaluations to employees including crane operators and riggers; and (2) the decision not to inspect (or to oversee) equipment and rigging for safety before it is used in the field by employees on the jobsite.

24.     According to at least one source, AECOM made some effort to be proactive on the Alcove construction project, but safety does not seem to be as important as quality and/or productivity.

25.     A hazard analysis found that overall AECOM enlisted supervisory personnel with some safety knowledge to perform inspections, but not all hazards were or could be identified.  The analysis determined that AECOM was deficient in safety personnel, safety committees and/or consultants who would perform frequent inspections for the sole purpose of identifying existing and/or potential hazards.

26.     AECOM held daily safety meetings and conducted walk throughs to identify

6

and correct hazards. The analysis found that most serious and non-serious hazards are corrected, most engineering controls are in place, and most employees wear PPE, or personal protective equipment. However, AECOM did not meet the highest hazard prevention and control standard, which required them to correct identified hazards immediately.

27.     In terms of employee training, AECOM was found to hold ongoing classroom and/or tool box training with most employees able to recall safety and health avoidance measures. AECOM did not have a well established training program in place for new hires and ongoing training in required subjects with employee training recall.

28.     These deficiencies, combined with those set forth below, allowed a jobsite culture to exist whereby construction workers were encouraged to take shortcuts and bypass mandatory safety mechanisms designed to ensure the health and wellbeing of workers present, including CHRISTOPHER RICE.

29.     Due to lax safety policies, protocols, and oversight, events were set in motion that would culminate in the incident that tragically and unnecessarily took CHRISTOPHER RICE'S life.

30.     On or shortly before June 17th, 2022, the building had reached the 31st floor.

31.     On the morning of the incident, several employees and/or contractors of each Defendant were either working on or in the immediate vicinity of the 31st floor of the Alcove building.

32.     At all times material hereto, CHRISTOPHER RICE, was an employee of Lee Company as a Lead Trimble Operator. Lee Company was subcontracted to perform plumbing, heating, cooling, and electrical tasks for the Alcove construction project.

33.     As Lead Trimble Operator, CHRISTOPHER RICE, was tasked with using a

7

Trimble unit to survey and mark locations for the installation of PEX Chairs and Sleeves before concrete was poured for each floor. The PEX Chairs and Sleeves create tubes to protect and route wiring or lines through concrete slabs.

34.    Specifically, HARCON dispatched two employees—designated as "riggers"—to assist on the 31st floor of the Alcove construction project.

35.    Because MCHUGH subcontracted HARCON, they were required to submit a weekly job ticket acknowledging that the riggers were qualified.

36.    A "qualified rigger" must meet certain criteria including possessing a recognized degree, certificate, or professional standing with extensive knowledge, training, and experience who can successfully demonstrate the ability to solve problems related to rigging loads. The person designated as the qualified rigger must have the ability to properly rig the load for a particular job. Each load that requires rigging has unique properties that can range from the simple to the complex.

37.    Based on the facts presented in this complaint, it is asserted that the HARCON riggers were not qualified or properly trained to conduct the type of rigging and hoisting assignment that led to the incident in question.

38.    The two riggers were in the process of moving material that would be used to support and stabilize concrete as it is poured. The material or "concrete forms" are removed once the concrete cures.

39.    By design, concrete formwork is slippery to prevent concrete from sticking to it during the removal process. The material used for concrete formwork ranges from timber, steel, aluminum, or plywood.

40.    Upon information and belief, HARCON was using seasoned plywood for the

Alcove construction project.

41.     Prior to the rigging and hoisting, HARCON's riggers oiled both sides of the concrete formwork.

42.     While working from the 31st floor, HARCON's riggers assembled a stack of 4x8 concrete formwork and were in the process of rigging the stack that would be hoisted and moved by a tower crane operator.

43.     The load of formwork at issue in this lawsuit was new and had never been used before.

44.     MAXIM CRANE employed the crane operator who was tasked to assist two HARCON riggers to move materials from one location to another.

45.     HARCON's riggers were communicating with MAXIM CRANE's operator by radio.

46.     Immediately prior to the incident that is the subject of this complaint, HARCON's riggers communicated with MAXIM CRANE's operator to make a "blind" pick from the corner of the elevator core on the 31st floor. The pick was "blind" due to the angle of the crane cab and the fact that the elevator core extended above the location of the pick in the line of site from the crane operator to the load itself.

47.     In a "blind" pick situation, MAXIM CRANE's operator had to rely on the effective communication with the riggers to ensure a safe pick.

48.     The load, which consisted of approximately seventeen (17) sheets of concrete formwork, was rigged with 20' nylon straps in a single choker hitch configuration on each side of the 4x8 stack of formwork. The nylon straps were placed approximately six (6) inches from each end of the concrete formwork.

9

49. In violation of industry regulations, the nylon straps were not inspected prior to their use on the day of the incident.

50. The rigger(s) instructed the crane operator to pick the load up a couple of feet and then trolley out towards column 5, away from the elevator core.

51. Once the rope was clear of any obstacles, such as steel beams extending from the elevator core, the riggers instructed the crane operator to send the load to the South side, meaning to send it over a vertical wall located along the column line 5.[2]

52. As the crane operator began to move the load towards the south side, the load came loose and fell from the rigging.

53. At approximately 9:15 a.m. on June 17th, 2022, Plaintiff's decedent, CHRISTOPHER RICE, was standing on the 31st floor operating a Trimble unit to survey and set the plumbing penetration point when, through no fault of his own, he was struck by the load of concrete formwork that fell from the rigging. The force of the impact pushed MR. RICE through the safety guardrail system surrounding an opening on the 31st floor, causing him to fall some 30 feet below and land in a stairwell on the 28th floor. The impact on Plaintiff's decedent, CHRISTOPHER RICE, was so great, after having suffered excruciatingly painful crush injuries, leaving him fighting for his life as he fell to his death.

54. According to one source, the falling formwork sounded like an "explosion" when it struck MR. RICE as well as the deck above and below the 31st floor.

55. According to at least one source who was present on the 31st floor at the time of the incident, there was little to no communication from the riggers other than the occasional whistle. At the time of the incident, however, no whistle or warning was given.

---

[2] See aerial photograph of the 31st floor, attached as Exhibit B.

56.     Central to this case are the internal safety systems that were in place by each Defendant contractor to ensure the proper personnel, equipment, and methods were being used to avoid injury or death at the Alcove construction project.

57.     Several events converged to cause the tragic and untimely death of Plaintiff's decedent, CHRISTOPHER RICE. Among them, the decision to employ a single choker hitch as opposed to a double wrap choker hitch.

58.     A single choker hitch only compresses the load on 3 sides whereas the double wrap choker hitch compresses the load on all 4 sides providing crucial load control.

59.     In this case, the rigging used to pick up the load was not sufficient to secure the load of slippery concrete formwork.

60.     The single wrap choker hitch that was used by HARCON's riggers did not provide the necessary load control to prevent the unintentional displacement of the load, as happened here.

61.     Without rigging that provided compression from all 4 sides, the slippery load was able to move in the single wrap choker hitch and quickly displaced as it was being hoisted by the crane to a different location.

62.     This decision, as well as others described herein, had catastrophic consequences, and amounts to a serious safety breach that endangered the lives of workers on the Alcove construction project and resulted in the untimely death of Plaintiff's decedent, CHRISTOPHER RICE.

63.     Tennessee's Occupational Safety and Health Administration (TOSHA) is a state agency created to improve occupational safety and health through enforcement of the general industry, construction, and agricultural occupational safety and health standards in

11

workplaces. TOSHA Training Services assist employer, employees, and their representatives in reducing safety and health hazards in their workplaces and in complying with the requirements of Tennessee OSHA standards and regulations.

64. TOSHA has authority to issue citations against Defendants for safety violations related to construction activities for the Alcove construction project.

65. One such OSHA regulation specifically required Defendants to follow proper hoisting routes to minimize exposure of employees to hoisted loads consistent with public safety, including 29 CFR 1926.1425(a).

66. Additionally, OSHA regulations required Defendants to ensure that the materials being hoisted were rigged to prevent unintentional displacement, including 29 CFR 1926.1425(c)(1).

67. TOSHA conducted a post-fatality investigation, finding that the lack of adequate rigging and choice of route of the load directly contributed to the load displacement and death of CHRISTOPHER RICE.

68. TOSHA cited HARCON for violation of regulations for hoisting routes (1926.1425(a)) that reduce employee exposure.

69. TOSHA also cited HARCON for violation of regulations for rigging to prevent unintentional displacement of a load. (1926.1425(c)(1).

70. Defendants did not take reasonable steps to prevent CHRISTOPHER RICE's death on June 17th, 2022.

71. Defendants, individually and collectively, did not take reasonable steps to warn or notify other workers on the 31st floor that materials were being hoisted in their direction, including Plaintiff's decedent, CHRISTOPHER RICE.

72.     Defendants, individually and collectively, did not have proper warning procedures in place to ensure the safety and wellbeing of workers on the Alcove construction project, including Plaintiff's decedent, CHRISTOPHER RICE.

73.     Defendants, individually and collectively, chose to utilize inadequate rigging and communication methods that directly contributed to cause the injuries and death of Plaintiff's decedent, CHRISTOPHER RICE.

74.     Defendants, individually and collectively, with proper supervision and training, knew or should have known through the exercise of reasonable diligence that the rigging and communication method chosen for the load that displaced was not only foreseeable but predictable and highly likely under those conditions.

75.     According to HARCON's own employee, they were aware of the dangers and risks posed by the rigging of new, slippery concrete formwork. If fact, due to its slippery characteristics, sometimes nails would be used—"because [the formwork] is slick and will shift"—to stabilize a stack of forms to ensure they remain level and stable during hoisting operations.

76.     Defendants, individually and collectively, through its agents, employees, and/or contractors did not follow proper protocols or regulatory / industry standards required under the existing conditions. If they had MR. RICE would not have been killed.

77.     The incident described herein was solely caused by the negligent, careless, and reckless acts and/or omissions of Defendants as described herein.

78.     Defendants, individually and collectively, are 100% responsible for causing the incident of June 17th 2022 in which Plaintiff's decedent CHRISTOPHER RICE was killed.

79.     CHRISTOPHER RICE did nothing to cause or contribute to his death.

80. It was foreseeable that the means and methods employed by Defendants during the rigging and hoisting operations described herein would cause the type of harm and damages suffered by Plaintiff and the untimely death of Plaintiff's decedent CHRISTOPHER RICE.

81. Defendants, individually and collectively, had a duty to maintain and provide a safe worksite for CHRISTOPHER RICE and all similarly situated individuals on the worksite.

82. Defendants, individually and collectively, chose not to maintain and provide a safe environment on the worksite leading up to and immediately before the incident described herein.

83. Defendants, individually and collectively, had a duty to professionally train and supervise their employees to avoid creating hazardous and/or dangerous situations and conditions on the Alcove construction project.

84. Defendants, individually and collectively, chose not to professionally train and supervise their employees to avoid creating hazardous and/or dangerous situations and conditions on the Alcove construction project.

85. Defendants, individually and collectively, had a duty to professionally train and supervise their employees to identify and immediately eliminate hazardous situations and conditions which could endanger workers on the Alcove construction project.

86. Defendants, individually and collectively, chose not to professionally train and supervise their employees to identify and immediately eliminate hazardous conditions which could endanger guests and customers on its premises.

87. As a direct and proximate result of Defendants' individual and collective negligent and reckless acts and/or omissions and choices described herein, Plaintiff's

decedent, CHRISTOPHER RICE, was killed.

88. Defendants' negligence and/or gross negligence and/or recklessness was a substantial factor and proximate / legal cause of the severe injuries and death of Plaintiff's decedent, CHRISTOPHER RICE, and the resulting damages which include loss or damage that Plaintiff's decedent, CHRISTOPHER RICE, sustained between the time of his injury and his death, pecuniary loss, economic loss, medical expenses, lost wages, funeral and burial expenses, and punitive damages and the financial support he would have contributed to his spouse and survivors during their lifetimes, the loss of gifts and benefits those heirs would have received, the reasonable value of household services, loss of society, comfort, companionship, protection, affection, moral support, training, guidance and intimate relations (for his spouse).

## CLAIMS FOR RELIEF

89. Defendants are liable to Plaintiff CYNTHIA RICE for common law negligence for one or more of the following acts, omissions or other doctrines which all were substantial factors and contributed to cause the injuries and death and damages complained of including:

    a. ordinary negligence;

    b. negligence in the hiring, retention, training and supervision of employees and agents and/or contractors;

    c. negligence in the operational planning and selection of the equipment and routing;

    d. negligence in the supervision and training of its agents, employees, and/or contractors including the two riggers and crane operator;

e.  negligence in the maintenance and inspection of nylon straps;

f.  negligence in the operational planning and selection of the rigging configuration prior to hoisting slippery concrete formwork;

g.  negligence in the operational planning and selection of the method and communication before and during the blind pick;

h.  engaging in conduct with disregard for known dangers and risks posed by that conduct;

i.  vicarious liability for the negligent acts or omissions of the employee or agents, including the two riggers and crane operator, under agency theory / *respondeat superior*;

j.  res ipsa loquitur;

k.  reckless decision-making and conduct that foreseeably and predictably caused the incident and wrongful death in question; and

l.  liability pursuant to Restatement (Second) of Torts § 388, 389, 390, 391, 392 and 396;

90.  Defendants were negligent *per se* for not following one or more of the following statutes or regulations in effect at the time of the occurrence and for which Plaintiff's decedent CHRISTOPHER RICE was a member of the class for which those statutes or regulations were intended to protect and which were substantial factors and contributed to cause the injuries and damages complained of, including but not limited to:

a.  29 C.F.R. 1926 (Cranes & Derricks in Construction) et. seq., specifically including, but not limited to, the following sections and subsections:

i.  § 1926.201 – Signaling (referencing ANSI standards);

16

ii. § 1926.1419 – Signals – general requirements;

iii. § 1926.1420 – Signals – radio, telephone, or other electronic transmission of signals;

iv. § 1926.1421 – Signals – voice signals – additional requirements;

v. § 1926.1422 – Signals – hand signal chart;

vi. § 1926.251 – Rigging Equipment for material handling;

vii. § 1926.1425(a) - Hoisting Routes;

viii. § 1926.1425(c) – Guiding the Load, general requirements;

ix. § 1926.1425(c)(1) – Rigging to Prevent Displacement;

x. § 1926.1425(c)(3) – Must Be Rigged by Qualified Rigger;

xi. § 1926.1425(e)(1) – No Employees Under Load;

xii. § 1926.1425(e)(2) – Essential Employees in Fall Zone;

xiii. § 1926.1428 – Signal Person Qualifications;

b. ANSI / ASTM / CAN-CSA sections or references applicable to rigging and hoisting materials;

91. The negligence and negligence *per se* of Defendants proximately caused the injuries, including conscious pain and suffering, pre-crush fright and fear of impending death, and the severe crushing injury to Plaintiff's decedent, CHRISTOPHER RICE, which caused his untimely death shortly thereafter and further caused his surviving spouse and minor beneficiaries to suffer damages, including but not limited to, pecuniary loss, economic damages and loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of counsel, loss of training, loss of guidance, loss of education and loss of marital care.

17

## COUNT I
## NEGLIGENCE / NEGLIGENCE *PER SE* / RECKLESSNESS OF AECOM

92. The preceding paragraphs are hereby re-alleged as if fully restated herein.

93. Defendant AECOM owed a duty of reasonable care to the Plaintiffs.

94. At all times material hereto, Defendant AECOM had a duty to exercise reasonable care in the hiring, training, supervision and retention of its employees, agents, and contractors, including general oversight of all subcontractors retained for the Alcove construction project, to avoid causing injuries or death to others, including Plaintiff's decedent, CHRISTOPHER RICE. These duties include the duty to comply with all applicable provisions of the Occupational Safety and Health Administration (OSHA) and other applicable regulations and industry standards, and Tennessee state law.

95. Defendant AECOM, through its employees, breached the duties it owed to Plaintiff's decedent CHRISTOPHER RICE by committing one or more of the following negligent acts or omissions:

    a. Failing to properly hire qualified and/or trained riggers;

    b. Failing to properly train and/or supervise riggers;

    c. Failing to ensure the riggers and crane operator were familiar with the provisions OSHA and regulatory and industry standards;

    d. Failing to promulgate and enforce adequate policies and rules regarding the safe rigging techniques and hoisting operations;

    e. Failing to ensure its crane operator utilized the proper means and methods in conjunction with the two (2) riggers employed by HARCON, each of which failed to plan and use safe rigging techniques during hoisting operations;

18

f.   Failing to ensure that the HARCON riggers used a double choker hitch to secure the load of slippery concrete formwork;

g.   Failing to ensure that the crane operator used proper techniques in the performance of a blind pick;

h.   Failing to ensure and oversee the crane operator used proper and effective communication methods when communicating with the two riggers employed by HARCON;

i.   Failing to supervise and oversee the crane operator who chose to rely, without verifying, that the riggers had adequately rigged the concrete formwork before hoisting operations began;

j.   Failing to ensure and oversee the crane operator ensured that the two riggers employed by HARCON had inspected the rigging equipment and nylon straps for defects prior to beginning hoisting operations which led to the incident in question;

k.   Otherwise failing to use reasonable care.

96.   These actions, individually or taken together, constitute reckless conduct that exceeds ordinary negligence.

97.   Defendant AECOM's negligence, negligence per se, and recklessness proximately caused the injuries and severe crushing injury to Plaintiff's decedent, CHRISTOPHER RICE, which caused his untimely death thereafter and further caused his surviving spouse and minor beneficiaries to suffer damages as stated herein.

## COUNT II
## NEGLIGENCE / NEGLIGENCE *PER SE* / RECKLESSNESS OF MCHUGH

98.   The preceding paragraphs are hereby re-alleged as if fully restated herein.

19

99. At all times material hereto, Defendant MCHUGH had a duty to exercise reasonable care in the hiring, training, supervision and retention of its employees, agents, and contractors, including selection and retention of its subcontractor HARCON for the Alcove construction project, to avoid causing injuries or death to others, including Plaintiff's decedent CHRISTOPHER RICE. These duties include the duty to comply with all applicable provisions of the Occupational Safety and Health Administration (OSHA) and other applicable regulations and industry standards, and Tennessee state law.

100. Defendant MCHUGH, through its employees, breached the duties it owed to Plaintiff's decedent CHRISTOPHER RICE by committing one or more of the following negligent acts or omissions:

    a.  Failing to hire properly qualified subcontractors and/or trained riggers;

    b.  Failing to supervise HARCON's riggers subcontracted for the Alcove construction project;

    c.  Failing to verify HARCON's riggers were familiar with the provisions OSHA and regulatory and industry standards;

    d.  Failing to promulgate and enforce adequate policies and rules regarding selection and retention of subcontractors;

    e.  Failing to verify its subcontractor HARCON deployed qualified riggers who used safe rigging techniques during hoisting operations;

    f.  Failing to verify or require that HARCON's riggers inspected the rigging equipment including the nylon straps for defects prior to use on the Alcove construction project;

    g.  Failing to verify or require HARCON's riggers used a double choker hitch to

secure the load of slippery concrete formwork;

h. Failing to verify and require HARCON's riggers utilized the proper means and methods and safe rigging techniques for the load in question before or during hoisting operations;

i. Failing to verify and oversee HARCON's riggers used proper communication methods when communicating with the crane operator;

j. Otherwise failing to use reasonable care.

101. These actions, individually or taken together, constitute reckless conduct that exceeds ordinary negligence.

102. Defendant MCHUGH's negligence, negligence per se, and recklessness proximately caused the injuries and severe crushing injury to Plaintiff's decedent, CHRISTOPHER RICE, which caused his untimely death thereafter and further caused his surviving spouse and minor beneficiaries to suffer damages as stated herein.

<u>COUNT III</u>
<u>NEGLIGENCE / NEGLIGENCE *PER SE* / RECKLESSNESS OF HARCON, INC.</u>

103. The preceding paragraphs are hereby re-alleged as if fully restated herein.

104. At all times material hereto, Defendant HARCON had a duty to exercise reasonable care in the hiring, training, supervision and retention of its employees, agents, and contractors, including selection and retention of the riggers it assigned to the Alcove construction project, to avoid causing injuries or death to others, including Plaintiff's decedent, CHRISTOPHER RICE. These duties include the duty to comply with all applicable provisions of the Occupational Safety and Health Administration (OSHA) and other applicable regulations and industry standards, and Tennessee state law.

105. Defendant HARCON, through its employees, breached the duties it owed to

Plaintiff's decedent, CHRISTOPHER RICE, by committing one or more of the following negligent acts or omissions:

    a.  Failing to properly hire properly qualified subcontractors and/or trained riggers;

    b.  Failing to supervise the riggers subcontracted for the Alcove construction project;

    c.  Failing to verify and require the riggers were familiar with the provisions OSHA and regulatory and industry standards;

    d.  Failing to promulgate and enforce adequate policies and rules regarding selection and retention of subcontractors.

    e.  Failing to verify or require that the riggers inspected the rigging equipment including the nylon straps for defects prior to use on the Alcove construction project;

    f.  Failing to verify or require the riggers used a double choker hitch to secure the load of slippery concrete formwork;

    g.  Failing to verify and require the riggers utilized the proper means and methods and safe rigging techniques for the load in question before or during hoisting operations;

    h.  Failing to verify and oversee the riggers used proper communication methods when communicating with the crane operator;

    i.  Otherwise failing to use reasonable care.

106.    These actions, individually or taken together, constitute reckless conduct that exceeds ordinary negligence.

107.    Defendant HARCON's negligence, negligence per se, and recklessness proximately caused the injuries and severe crushing injury to Plaintiff's decedent, CHRISTOPHER RICE, which caused his untimely death thereafter and further caused his surviving spouse and minor beneficiaries to suffer damages as stated herein.

## COUNT IV
### NEGLIGENCE / NEGLIGENCE *PER SE* / RECKLESSNESS OF MAXIM CRANE

108.    The preceding paragraphs are hereby re-alleged as if fully restated herein.

109.    At all times material hereto, Defendant MAXIM CRANE had a duty to exercise reasonable care in the hiring, training, supervision and retention of its employees, agents, and contractors, including selection and retention of the crane operator it assigned to the Alcove construction project, to avoid causing injuries or death to others, including Plaintiff's decedent, CHRISTOPHER RICE. These duties include the duty to comply with all applicable provisions of the Occupational Safety and Health Administration (OSHA) and other applicable regulations and industry standards, and Tennessee state law.

110.    Defendant MAXIM CRANE, through its employees, breached the duties it owed to Plaintiff's decedent, CHRISTOPHER RICE, by committing one or more of the following negligent acts or omissions:

    a.  Failing to properly hire qualified crane operators;

    b.  Failing to supervise the crane operated retained for the Alcove construction project;

    c.  Failing to ensure the crane operator was familiar with the provisions OSHA and regulatory and industry standards;

    d.  Failing to promulgate and enforce adequate policies and rules regarding selection, training, and retention of crane operators;

23

e.  Failing to verify and require its crane operator utilized the proper means and methods in conjunction with the two (2) riggers employed by HARCON, each of which failed to plan and use safe rigging techniques during hoisting operations;

f.  Failing to verify and require that its crane operator used proper techniques in the performance of a blind pick;

g.  Failing to verify and require its crane operator used proper communication methods when communicating with the two riggers employed by HARCON;

h.  Failing to supervise and oversee its crane operator who chose to rely, without verifying, that the riggers had adequately rigged the concrete formwork before hoisting operations began;

i.  Failing to verify and require its crane operator to confirm that the two riggers employed by HARCON had inspected the rigging equipment and nylon straps for defects prior to beginning hoisting operations which led to the incident in question;

j.  Failing to verify or require the riggers used a double choker hitch to secure the load of slippery concrete formwork;

k.  Otherwise failing to use reasonable care.

111.  These actions, individually or taken together, constitute reckless conduct that exceeds ordinary negligence.

112.  Defendant MAXIM CRANE's negligence, negligence per se, and recklessness proximately caused the injuries and severe crushing injury to Plaintiff's decedent, CHRISTOPHER RICE, which caused his untimely death thereafter and further caused his

24

surviving spouse and minor beneficiaries to suffer damages as stated herein.

## CONFLICT OF LAWS

113.  A conflict of laws exists as to the application of Tenn. Code Ann. § 29-39-102. Many policy decisions made by Defendants were made from their corporate headquarters in four different states. Pennsylvania and Illinois, for example, do not recognize limitations on non-economic damages under the circumstances of this lawsuit. Neither do Georgia or Texas. As a result, any purported limitation on non-economic damages under Tennessee law is inapplicable before this court. MS. RICE seeks declaratory relief, if necessary.

## DAMAGES

**WHEREFORE**, Plaintiff, CYNTHIA RICE, the Surviving Spouse of decedent, CHRISTOPHER RICE, demands judgment for all causes of action as set forth in paragraphs 1 through 112 against all Defendants, jointly and severally. Specifically, Plaintiff CYNTHIA RICE prays that damages be assessed in the amount of Five Million Dollars 00/100 cents ($5,000,000.00), although, out of respect for the jury's consideration, Plaintiff CYNTHIA RICE will accept less if the jury so decides. Plaintiff CYNTHIA RICE further demands a jury of twelve (12) peers under the law and evidence and any such general relief to which she may be entitled, under the following categories of damages:

  a.  for general and special damages;

  b.  for the severe injuries and death of Plaintiff's decedent, CHRISTOPHER RICE, and the resulting damages which include loss or damage that Plaintiff's decedent, CHRISTOPHER RICE, sustained between the time of his injury and his death, economic loss, the financial support he would have contributed to his spouse and survivors during their lifetimes, the financial support he would

25

have contributed to his spouse and survivors during their lifetimes, the loss of gifts and benefits those heirs would have received, funeral and burial expenses, any costs related to the incident, the reasonable value of household services, loss of society, companionship, protection, affection, moral support, training, guidance and marital relations (for his spouse).

c.   for punitive damages;

d.   for any and all damages available at equity or law;

e.   for any and all pre and post judgment interest, as allowed by law;

f.   for any and all costs and fees, as allowed by law; and

g.   for any and all such further relief this Court may deem just and proper.

Respectfully submitted,

**GRIFFITH LAW, PLLC**

***/s/Craig P. Glenn***
Craig P. Glenn, #31439
256 Seaboard Lane, Suite E-106
Franklin, Tennessee 37067
P: (615) 807-7900
F: (615) 656-0994
craig@griffithinjurylaw.com

*Counsel for Plaintiff*

26